714 F.2d 848
 13 Ed. Law Rep. 27
 Oswald F. ELBE, Elmo Christensen, James L. Cope, James A.
Fravel, Jr., Laird P. Gillem, William H. Harris, Howard
Hermanson, C.R. Kratz, John W. Mitchell, Fletcher C. Nelson,
Don Rasmussen, Lloyd K. Salisbury, Marvin J. Scott, J.
Howard Snyder, John Sprecher, and Robert C. Swanson, Appellants,
v.
YANKTON INDEPENDENT SCHOOL DISTRICT NO. 1; Arvin Burkhardt,
Don Bierle, Rev. Harold Hiemstra, Mary Alice Halverson and
Robert Weverstad as members of the School Board of the
Yankton Independent School District No. 1; Sioux Falls
Independent School District No. 49-5; Richard Bohy, Doris
Larson, David Brandt, Pam Nelson and John Simko, Jr. as
members of the School Board of the Sioux Falls Independent
School District No. 49-5; Pierre School District No. 32-2;
Patricia Adam, Peggy Cruse, Howard Hutchings, Richard
Schoessler and Gary Snow, as members of the School Board of
the Pierre School Dist. No. 32-2, and Dan Naughton; Barbara
Naughton; James W. Fitzgibbons and Rose Clare Fitzgibbons, Appellees.
 No. 82-2094.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 19, 1983.
Decided Aug. 18, 1983.
 
 Gerald L. Reade, Brady, Kabeiseman, Reade, Abbott & Johnson, Yankton, S.D., for appellee Yankton Ind. School Dist. No. 1. et al.
 Robert D. Hofer, Riter, Mayer, Hofer & Riter, Pierre, S.D., for appellee Pierre School Dist. No. 32-2.
 Jeremiah D. Murphy, Boyce, Murphy, McDowell & Greenfield, Sioux Falls, S.D., for intervenor-defendants-appellees.
 Lee Boothby, Berrien Springs, Mich., Marvin Bailin, Christopherson, Bailin & Anderson, Sioux Falls, S.D., for appellants.
 Deming Smith, Charles D. Gullickson, Regina M. Shields, Davenport, Evans, Hurwitz & Smith, Sioux Falls, S.D., for appellee Sioux Falls School Dist. No. 49-5.
 Before ROSS, ARNOLD and JOHN R. GIBSON, Circuit Judges.
 ROSS, Circuit Judge.
 
 
 1
 In 1980 plaintiffs-appellants brought an action challenging the constitutionality of the South Dakota textbook loan statutes on the grounds that the statutes on their face and as applied by the defendant-appellee school districts violated the Establishment Clause of the First Amendment to the United States Constitution and the South Dakota Constitution. On August 13, 1982, after various briefs, affidavits, admissions, and answers to interrogatories were filed by the parties, the district court[1] granted defendants' motion for summary judgment under Fed.R.Civ.P. 56, and dismissed appellants' pendent state law claims. Appellants argue that the district court erred in (1) finding the statutes constitutional on their face, (2) failing to adequately consider the federal constitutional challenge to the statutes as applied or administered, and (3) dismissing the appellants' pendent claims.
 
 I.
 
 2
 Appellate review of a grant of summary judgment under Rule 56 is governed by the same standard as that applied by the district court. That is, we must view the facts (i.e., the pleadings, affidavits, admissions, answers to interrogatories, and depositions) in the light most favorable to the party against whom the motion is made, giving that party the benefit of all inferences that may be reasonably drawn therefrom, to determine if the moving party has clearly shown that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Snell v. United States, 680 F.2d 545, 547 (8th Cir.), cert. denied, --- U.S. ----, 103 S.Ct. 344, 74 L.Ed.2d 384 (1982); Diebold v. Civil Service Comm'n, 611 F.2d 697, 699-700 (8th Cir.1979); Fed.R.Civ.P. 56(c). Allegations in a complaint, which are not contested by the moving party by affidavit or other evidentiary materials, are assumed true. Kelsey v. Ewing, 652 F.2d 4, 5 (8th Cir.1981). Rule 56(e), which provides, in part, that when a motion for summary judgment is supported by affidavit or otherwise under this rule the opposing party may not rest on his pleadings, does not alter these basic principles or the movant's burden of proof. Stifel, Nicolaus & Co. v. Dain, Kalman & Quail, 578 F.2d 1256, 1263 (8th Cir.1978). What is intended by the Rule is merely that if the moving party submits evidentiary material which convincingly shows that there is no genuine issue of material fact, the opposing party must come forward with specific facts that demonstrate a genuine issue for trial. See Beckers v. International Snowmobile Industry Ass'n, 581 F.2d 1308, 1311 (8th Cir.1978), cert. denied, 440 U.S. 986, 99 S.Ct. 1801, 60 L.Ed.2d 248 (1979); Stifel, Nicolaus & Co., supra, 578 F.2d at 1263.
 
 II.
 
 3
 As most recently stated by the Supreme Court in Mueller v. Allen, --- U.S. ----, 103 S.Ct. 3062, 77 L.Ed.2d 721 (1983), review of Establishment Clause challenges are generally guided by a three-part test: " 'First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion * * *; finally, the statute must not foster "an excessive government entanglement with religion." ' " Id. at ----, 103 S.Ct. at 3066 (quoting Lemon v. Kurtzman, 403 U.S. 602, 612-13, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971)).
 
 
 4
 The statutes challenged in the present case provide as follows:
 
 
 5
 It is declared to be the policy of this state that the common good and general welfare of the state are promoted by an educated and enlightened citizenry and, to assist in achieving those goals and in accord with the child benefit doctrine, there shall be loaned without charge to all persons ages five through nineteen such nonsectarian textbooks and tax-related workbooks designed for individual use as are normally furnished by the school boards of the several public school districts of this state to the students enrolled in the public schools of such respective districts. It is further declared to be the policy of this state that, in the loaning of such materials to such persons, the state shall be neutral to and between all such persons.
 
 
 6
 S.D. Codified Laws Ann. § 13-34-16.2 (1982).
 
 
 7
 To implement § 13-34-16.2, each public school board shall loan without charge to all persons ages five through nineteen who are either enrolled in a public school, or in a school supervised in accord with chapter 13-4, or who are engaged in a course of instruction pursuant to § 13-27-3, within the school district under such board's jurisdiction, or who are residing in such district but are not enrolled in any such school or engaged in any such course of instruction, such nonsectarian textbooks and text-related workbooks designed for individual use as are normally furnished by such school board to individual students enrolled in the public schools of the district under such board's jurisdiction. All such textbooks and text-related workbooks shall be approved by the respective school boards.
 
 
 8
 Id. at § 13-34-16.3.
 
 
 9
 Appellants do not seriously contend that the textbook loan statutes lack a legitimate secular purpose. Instead appellants generally maintain that on its face, the statute has the primary effect of advancing religion by providing public aid to church-related schools and that it fosters excessive involvement between the state and church in religious matters. Based on the Supreme Court's decisions in Meek v. Pittenger, 421 U.S. 349, 95 S.Ct. 1753, 44 L.Ed.2d 217 (1975) and Board of Educ. v. Allen, 392 U.S. 236, 88 S.Ct. 1923, 20 L.Ed.2d 1060 (1968), upholding the constitutionality of similar textbook loan statutes, the district court granted summary judgment to appellees on the facial challenge to the South Dakota textbook loan statutes. We agree that Meek and Allen are largely controlling and that appellees are entitled to a summary judgment on their facial challenge as a matter of law.
 
 
 10
 Appellants would distinguish these decisions and the related decision in Wolman v. Walter, 433 U.S. 229, 97 S.Ct. 2593, 53 L.Ed.2d 714 (1977) (upholding Ohio textbook loan statute in part) on the grounds that unlike the statutes in those cases: (1) the South Dakota statutes refer to "nonsectarian" books rather than "secular" books; (2) the South Dakota statutes do not require the same textbooks as those used in public schools; and (3) the South Dakota statute does not restrict text-related workbooks to those which are reusable. The appellants also allege that excessive entanglement between the sectarian schools and the state results from the statutory requirement that school districts approve materials to be loaned.
 
 
 11
 The use of the term "nonsectarian" textbooks rather than "secular" textbooks in the South Dakota textbook loan statutes is somewhat disturbing and indicates apparent semantic carelessness by the South Dakota Legislature. However, we do not believe that the use of this term is fatal to the constitutionality of the statutes under the Supreme Court's decisions in Board of Educ. v. Allen, supra, and Meek v. Pittenger, supra. It should be noted that neither the New York statute in Allen nor the Pennsylvania statute in Meek employed the term "secular" textbooks. Instead, it would appear that the crucial limitation on the nature of textbooks which could be loaned under the statutes was that books loaned were "textbooks which are designated for use in any public elementary or secondary schools of the state or are approved by any boards of education." Board of Educ. v. Allen, supra, 392 U.S. at 239, 88 S.Ct. at 1924, or textbooks "which are acceptable for use in any public, elementary, or secondary school of the Commonwealth." Meek v. Pittenger, supra, 421 U.S. at 354, 95 S.Ct. at 1757. In the absence of evidence in the record to the contrary, the Court assumed based on a literal reading of the statute "that the books loaned to students are books that are not unsuitable for use in the public schools because of religious content." Board of Educ. v. Allen, supra, 392 U.S. at 245, 88 S.Ct. at 1927. See Meek v. Pittenger, supra, 421 U.S. at 361-62, 95 S.Ct. at 1761 (plurality opinion). As the Court subsequently noted in Wolman v. Walter, supra, 433 U.S. at 251 n. 18, 97 S.Ct. at 2607 n. 18: "we now follow as a matter of stare decisis the principle that restriction of textbooks to those provided the public schools is sufficient to ensure that the books will not be used for religious purposes."
 
 
 12
 The South Dakota textbook loan statutes appear to be functionally equivalent to the statutes in Allen and Meek in that they limit books that can be loaned to those that are "designed for individual use as are normally furnished by the school boards of the several public school districts of the state to the students enrolled in the public schools * * *," and are "approved by the respective school boards." S.D. Codified Laws Ann. §§ 13-34-16.2, 13-34-16.3. Moreover, appellants do not allege that religious textbooks have been loaned under the statute, and like the record in Allen and Meek, the record in the instant case contains no suggestion of such abuse. Under these circumstances "we cannot assume that school authorities, who constantly face the same problem in selecting textbooks for use in the public schools, are unable to distinguish between secular and religious books or that they will not honestly discharge their duties under the law." Board of Educ. v. Allen, supra, 392 U.S. at 245, 88 S.Ct. at 1927.[2]
 
 
 13
 Appellants also allege that the requirement of school board approval of texts constitutes excessive entanglement between the state and sectarian schools. To the extent appellants' argument is that this provision renders the statute facially unconstitutional, it has no merit. This is essentially the same requirement which was contained in the textbook loan statute found not to violate the Establishment Clause in Board of Educ. v. Allen, supra, 392 U.S. 236, 88 S.Ct. 1923, 20 L.Ed.2d 1060. See Mueller v. Allen, supra, --- U.S. at ---- & n. 11, 103 S.Ct. at 3071 & n. 11; Meek v. Pittenger, supra, 421 U.S. at 361 n. 11, 95 S.Ct. at 1761 n. 11.[3]
 
 
 14
 In summary, we conclude that Board of Educ. v. Allen and Meek v. Pittenger are controlling on the issue of the facial constitutionality of the South Dakota textbook loan statutes, and require a finding that, as written, the statutes do not violate the Establishment Clause.
 
 III.
 
 15
 Nevertheless, our inquiry is not at end. Facial neutrality of a particular statute is not sufficient if the statute, as construed, applied or administered violates first amendment proscriptions.[4] Despite the fact that appellants clearly raised federal issues concerning the constitutionality of the South Dakota textbook loan statutes as they were being applied or administered by the appellees, it is not clear from the district court's opinion whether the court fully considered this aspect of appellants' challenge. In fact, it would appear that the district court declined to consider the issue of the improper administration of the statutes because it believed that issue to be one of state law. See Elbe v. Yankton Indep. School Dist., No. CIV80-4034, slip op. at 1, 7 (D.S.D. Aug. 13, 1982) (unpublished memo and order).
 
 
 16
 The only indication that the court considered appellants' challenge is that part of the district court's opinion relating to appellants' argument that the fact the private schools store the loaned books on their premises indicates that the benefits of the statutes run directly to the sectarian schools rather than the individual students. We agree with the district court that under Board of Educ. v. Allen and Meek v. Pittenger this procedure is generally constitutionally acceptable. See Elbe v. Yankton Indep. School Dist., supra, slip op. at 6; Board of Educ. of Allen, supra, 392 U.S. at 244 n. 6, 88 S.Ct. at 1926 n. 6, Meek v. Pittenger, supra, 421 U.S. at 361 n. 9, 95 S.Ct. at 1761 n. 9. Moreover, appellants have offered nothing to rebut appellees' showing (by affidavit, admissions, or answers to interrogatories) that this procedure is not being used to provide direct aid to the nonpublic schools.
 
 
 17
 Nevertheless, keeping in mind the strict standard of review applicable to motions for summary judgment, we believe that the meager record in the present case clearly shows that appellees have failed to prove that no genuine issue of material fact exists regarding the constitutionality of other aspects of the application or administration of the statutes by the appellees. In particular, we direct the district court's attention to appellants' argument that the admissions and answers to interrogatories supplied by appellees clearly show that the statutes have been construed and applied to allow the provision of instructional materials other than textbooks to sectarian schools within the districts. In Meek v. Pittenger, supra, and Wolman v. Walter, supra, the Supreme Court established that the provision of ostensibly neutral or secular instructional materials[5] to nonpublic schools either directly or indirectly violates the Establishment Clause in that it "has the unconstitutional primary effect of advancing religion because of the predominantly religious character of the schools benefiting from the Act." Meek v. Pittenger, supra, 421 U.S. at 363, 95 S.Ct. at 1762. See id. at 363-66, 95 S.Ct. at 1762-63; Wolman v. Walter, supra, 433 U.S. at 248-51, 97 S.Ct. at 2605-07. As noted in Wolman, "[i]n view of the impossibility of separating the secular education function from the sectarian, the state aid inevitably flows in part in support of the religious role of the schools." Id. at 250, 97 S.Ct. at 2606.
 
 
 18
 The record in the instant case discloses that materials that have been supplied by the public school districts to nonpublic sectarian schools within the district include teacher's manuals, teacher's editions to textbooks, periodicals, record books, library books, duplicating masters, test booklets, and student profile sheets.[6] Although the record, at this point in the proceedings, is not sufficient for us to determine the exact nature of these materials, we believe that it does unquestionably demonstrate that a genuine issue of material fact exists as to whether or not the instructional materials being provided to the nonpublic schools fall within the constitutional proscriptions established by the Court in Meek and Wolman. Consequently, remand is necessary to determine whether or not the statutes have been construed and applied in this regard in such a manner so as to have "the impermissible primary effect of advancing religion." Meek v. Pittenger, supra, 421 U.S. at 366, 95 S.Ct. at 1763.
 
 IV.
 
 19
 In conclusion, we affirm the district court's entry of summary judgment on appellants' facial challenge to the South Dakota textbook loan statutes under the first amendment. However, because we find that the district court failed to adequately consider appellants' federal constitutional challenge to the statutes as construed and applied by the appellees, and because we hold that summary judgment is inappropriate based on the limited record, we reverse as to that claim and remand to the district court for proceedings consistent with this opinion. Furthermore, because appellants' pendent claim based on the South Dakota Constitution was dismissed by the district court solely because of the summary disposal of the federal claim, we also remand these issues of state law to the district court for reconsideration of its pendent jurisdiction. See, e.g., Greater Iowa Corp. v. McLendon, 378 F.2d 783, 799 (8th Cir.1967).
 
 
 
 [1]
 The Honorable John B. Jones, United States District Court for the District of South Dakota
 
 
 [2]
 In light of the foregoing we conclude that appellants' contention that the South Dakota statutes are constitutionally flawed because they do not require the same textbooks as those used in the public schools requires little comment. It should suffice to note that neither of the statutes upheld in Board of Educ. v. Allen, 392 U.S. 236, 88 S.Ct. 1923, 20 L.Ed.2d 1060 (1968), or Meek v. Pittenger, 421 U.S. 349, 95 S.Ct. 1753, 44 L.Ed.2d 217 (1975) contained such a requirement. See id. at 361-62 & n. 11, 95 S.Ct. at 1761 n. 11 (plurality opinion); Board of Educ. v. Allen, supra, 392 U.S. at 239, 88 S.Ct. at 1924. We also fail to see any constitutional significance to the fact that the South Dakota statutes do not restrict "text-related workbooks" to those that are reusable as did the Pennsylvania statute in Meek or the parties' stipulation concerning the Ohio statute in Wolman v. Walter, 433 U.S. 229 (1977). See id. at 237, 97 S.Ct. at 2599 (plurality opinion); Meek v. Pittenger, supra, 421 U.S. at 354 n. 3, 95 S.Ct. at 1757 n. 3. We can glean nothing from those cases which even remotely suggests that the constitutionality of the statutes turned on the reusable nature of the workbooks, and based on our reading of these cases, as well as Allen, we cannot conclude that providing nonreusable text-related workbooks to all children in both public and private schools would have a substantially greater effect that advances religion than would the loan of any other secular text
 
 
 [3]
 This conclusion does not necessarily preclude an argument that, as applied, the provision concerning school board approval of texts has resulted in excessive entanglement of the state with religion. See generally Lemon v. Kurtzman, 403 U.S. at 602, 619-24, 91 S.Ct. at 2105, 2114-16 (1971). But see Mueller v. Allen, --- U.S. ----, ---- n. 11, 103 S.Ct. 3062, 3071 n. 11, 77 L.Ed.2d 721 (1983)
 
 
 [4]
 See generally Board of Educ. v. Allen, supra, 392 U.S. at 245, 248, 88 S.Ct. at 1927, 1929; Fowler v. Rhode Island, 345 U.S. 67, 69, 73 S.Ct. 526, 527, 97 L.Ed. 828 (1953); United States v. Maskeny, 609 F.2d 183, 192 (5th Cir.), cert. denied, Darwin v. United States, 447 U.S. 921, 100 S.Ct. 3010, 65 L.Ed.2d 1112 (1980); Hamer v. Musselwhite, 376 F.2d 479, 482 (5th Cir.1967); Lendall v. Cook, 432 F.Supp. 971, 976-77 (E.D.Ark.1977) (three-judge dist. ct.); Meek v. Pittenger, 374 F.Supp. 639, 646 (E.D.Pa.1974) (three judge dist. ct.), aff'd in part, 421 U.S. 349, 95 S.Ct. 1753, 44 L.Ed.2d 217 (1975)
 
 
 [5]
 In Meek v. Pittinger, supra, instructional materials included secular or neutral "books, periodicals, documents, pamphlets, photographs, reproductions, pictorial or graphic works, musical records, maps, charts, globes, sound recordings * * *, films * * *, or any other printed and published materials of a similar nature * * *." 421 U.S. at 354 n. 4, 95 S.Ct. at 1758 n. 4. The statute struck down in Wolman v. Walter, supra, authorized loans to students or their parents of instructional materials and equipment of the kind in use in the public schools within the district which are " 'incapable of diversion to religious use.' " 433 U.S. at 248, 97 S.Ct. at 2605
 
 
 [6]
 See Defendant Pierre School District's Answers to Plaintiffs' Interrogatories, Interrogatories No. 3, No. 5, and attached purchase orders; Answers of Defendant Sioux Falls School District to Plaintiffs' Interrogatories and Requests for Production of Documents, Interrogatories No. 3, No. 5, and Ex. A. Although the Answers to Interrogatories supplied by appellee Yankton Independent School District do not specifically disclose that Yankton has provided proscribed instructional materials to nonpublic schools under the textbook loan statutes, nothing in the present record (i.e., affidavits, admissions, answers to interrogatories) convincingly shows that such materials have not supplied. Thus, we believe that the present record concerning Yankton is insufficient to prove the absence of a genuine issue of material fact with regard to that district's administration of the statute as well. See Kelsey v. Ewing, 652 F.2d 4, 5 (8th Cir.1981)